THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES J. WALKER, Relator, *v.* THEODORE ROOSEVELT and Others, Police Commissioners, Composing the Board of Police Commissioners of the Police Department of the City of New York, Respondents.

*Police board of the city of New York — a conviction reversed as against the weight of evidence — a charge preferred as an afterthought after another charge had been dismissed.*

Where a roundsman of the police force of the city of New York, upon discovering a patrolman, while on duty, drinking from a glass which had been brought to him from a saloon, orders the patrolman to go to the station house, where the roundsman, upon a mere suspicion, prefers a charge of intoxication against him, and, upon learning the next day that the charge of intoxication had fallen through, at once charges the patrolman for the first time with using vile and insulting language to him upon the way to the station house, the testimony of the roundsman in support of the latter charge is open to grave suspicion; and where the only testimony in support of the charge is that of the roundsman, which is refuted by three unimpeached and apparently disinterested witnesses, a conviction of the patrolman upon that charge will be reversed as against the weight of evidence.

RUMSEY and PATTERSON, JJ., dissented.

CERTIORARI issued out of the Supreme Court, and attested on the 24th day of March, 1897, directed to Theodore Roosevelt and others, police commissioners, composing the board of police commissioners of the police department of the city of New York, commanding them to certify and return to the office of the clerk of the county of New York all and singular their proceedings in relation to the dismissal of the relator from the police force of the police department of the city of New York.

*Louis J. Grant,* for the relator.

*Terence Farley,* for the respondents.

BARRETT, J.:

The relator, a patrolman, was dismissed from the force on January 27, 1897, on charges of using insolent and indecent language to Roundsman William A. Bailey, and of loitering on post.  The only witness in support of the charges was this roundsman.  Bailey testified that on November 6, 1896, the relator lingered on the southwest

corner of Rector street and Trinity place from eleven-thirty-one to eleven-forty-five P. M., in conversation with two citizens; that just before the expiration of this period a glass was brought him from a saloon near by, from which he drank, and that thereupon he moved on. Upon this, to use the roundsman's own words, " I called him back and asked him if that was the way he was doing his duty, loitering there 14 minutes in conversation with two citizens, and having a drink brought out to him. He looks at me, and he says : ' You accuse me of drinking rum ? ' I says, ' No ; I don't accuse you of drinking rum ; you look as if you have been drinking ; I tell you now that I think you are drunk, and I order you to report to the station house forthwith.' " On the way to the station house, he now says, the relator used the vile and insulting language set forth in the specifications. At the station house, however, his charge was of intoxication, and thereupon the sergeant made the relator walk the floor. The relator then walked perfectly straight, as the roundsman admits; and the surgeon, who came later, pronounced him sober. The roundsman did not learn this latter fact until the next day, when he at once made the present charges.

Certainly this testimony has unsatisfactory features. The circumstances attending the first charge are such that controlling weight ought not to be given to the roundsman's subsequent statements, when such statements are unsupported, and are denied by several unimpeached witnesses. To charge a police officer with intoxication, while upon duty, is a sufficiently serious matter. Yet the roundsman made this charge ; and he made it without the slightest foundation or justification. He takes pains to state that he based it upon his own observation of the relator's condition. He accused him thus: " You look as if you have been drinking ; I tell you now that I think you are drunk." And he follows this up by stating that, on the way to the station house, the relator " was able to stand and able to walk, but not steady." Yet the station house was only two blocks and a half away, and there the relator walked straight enough to satisfy the critical eye of the sergeant; " perfectly straight," as the roundsman himself admits.

It is quite clear that Bailey jumped at the conclusion that the relator had been drinking intoxicating liquor, from the fact that something in a glass was brought out to him. This fact was,

undoubtedly, the key to the roundsman's conduct throughout. He is careful to deny that he charged the relator with drinking rum; but the latter and the two persons with whom he was conversing assert the contrary; and all the probabilities favor their testimony. In fact, the truth is easily gathered from the roundsman's own testimony. He says that he asked the relator what he meant by "having a drink brought out to him." Surely he did not mean a drink of water. And, if he did not make the charge of drinking rum, why should the relator have appealed to the men with him, as the roundsman admits he did? We thus have the roundsman making this serious charge upon mere suspicion, for he is forced to admit that he could not see the contents of the glass; and then, when he saw its futility, denying that he ever made it. His manner of treating the charge is equally noteworthy. He admits that the relator appealed to those who were with him, and asked that the matter be looked into at once; and that he refused. He testified: "Didn't he (the relator) ask you to make an investigation then and there as to what he had? A. He did. Q. Did you do it? A. No, sir." Instead of making the desired investigation, he prepared to follow the dictates of his own suspicions, and, relying upon them alone — in the face of evidence that they were unfounded — to drag the relator off to the station house, and make a charge against him which would be a blot upon his record.

As to the alleged offenses for which the relator has been dismissed, this hasty roundsman deemed them of so little importance that he never even mentioned them until his first charge had fallen through. It is impossible, under such circumstances, not to look upon the roundsman's testimony, in support of these subsidiary charges, with grave suspicion. These charges certainly look like an afterthought. His testimony in support of them has no inherent weight, and it cannot bring conviction, as against the opposing testimony of three unimpeached witnesses, completely negativing the accusation of loitering and of using indecent language. These three witnesses testify that all the way to the station house they were within hearing distance of what passed between the roundsman and the relator, and they fully corroborate the latter's denial of the use of any bad language. There is complete unanimity in their statements, with-

out any such concurrence in *minutiæ* as would lead to the inference that they had been coached. Two of them were casual acquaintances of the relator, not friends, as claimed, and their testimony is in nowise impeached. Their presence upon the occasion in question is not doubted, and it could not well have been prearranged.

The other witness (Mulvey) was an absolute stranger to the relator. He, too, went to the station house, and was near enough to hear all that passed. And he also states positively that the relator did not use any of the language ascribed to him. The roundsman says that he did not see Mulvey, but does not attempt to deny that he was present. This witness, in appearing and testifying as he did, could have been actuated only by a sense of duty; either that, or his testimony was wholly fabricated — an assumption which is entirely gratuitous.

Unless these trials are to be treated as mere idle formalties, we are unable to see how the present proceedings can stand. It would be impossible to uphold the verdict of a jury upon the unsupported testimony of a witness whose credibility is thus shaken and who is combated by the credible testimony of three unimpeached and apparently disinterested witnesses. If ever we are to exercise the function conferred upon us by the statute, of reversing a conviction as against the weight and preponderance of evidence, we think it should be done in this case.

The proceedings must be annulled and the relator reinstated, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred; RUMSEY and PATTERSON, JJ., dissented.

RUMSEY, J. (dissenting):

Whenever a motion is made to set aside a verdict upon the ground that it is against the evidence it is incumbent upon the moving party to satisfy the court that the evidence so preponderates against the verdict that the court can see that it was the result of passion, prejudice, partiality or corruption. The same rule is applied in cases like the present, where an effort is made to reverse the findings of the commissioners solely upon the ground that they are not sustained by the evidence. (*People ex rel. Lang* v. *Martin*, 5 App. Div. 217; *People ex rel. Strauss* v. *Roosevelt*, 2 id. 536.)

The sole question here is one of fact. In considering it, it must not be forgotten that the commissioners who decided it, while they did not have an opportunity to see the witnesses, did have personal acquaintance with the two members of the police force, whose evidence was contradictory, and were aware how much weight ought to be given to each of them, and that one of the commissioners had the benefit of seeing the witness and hearing him testify. The charge against the relator was of conduct unbecoming an officer, and the specification was that, on the 6th of November, 1896, he being a patrolman and on patrol, used insolent and indecent language to Roundsman Bailey, who was his superior officer. The language it is not necessary to repeat; but if such language was used, it was, undoubtedly, a sufficient reason for the dismissal of the relator. The question, then, is whether, upon all the evidence, we must say that the commissioners made a mistake in concluding that the language was used.

The undisputed facts are that, on the night in question, the relator was on patrol. The roundsman, Bailey, while making his rounds, discovered the relator in conversation with two citizens in front of a saloon. Just how long he was there is in dispute. The roundsman says that it was from eleven-thirty-one to eleven-forty-five. The defendant and his witnesses make the time somewhat shorter, but no one of them is able to specify precisely how long it was. It is conceded, however, that he was there. After the roundsman had seen him at this point "loitering," as he calls it, one of the men with whom he was talking went into the saloon and brought out something in a glass, which he gave to the patrolman, who drank it and started off. The roundsman thereupon started toward the relator, and the relator walked away. He was called back by the roundsman, who accused him of loitering there fourteen minutes in conversation with two citizens, and having a drink brought out to him. The patrolman stated that he drank nothing but water or seltzer, and that he was talking with the citizens about two suspicious characters to whom they had called his attention. There was some considerable conversation in regard to the drinking, whereupon the roundsman accused the patrolman of being drunk, and ordered him to the station house. On the way to the station house there was some conversation between them, in the course of which the roundsman insists

that the words complained of were used. This, however, is denied by the relator, and the question is whether the commissioners erred in believing the roundsman. He testified that on the way to the station house the patrolman was excited and angry, and expostulated against being put under arrest, and, so far as the fact that he expostulated, and that he resented his arrest and complained of it as unjust, the roundsman is clearly corroborated by all the witnesses. He testifies that on the way to the station house and in the course of his complaints he used the words complained of. This is denied by the patrolman, who says that he had a conversation with the roundsman while they stood at the corner, but he does not pretend to give one word that was said between them from the time they started to the station house until they arrived there, and there is nothing in his testimony from which it could be inferred that anything was said between them. Although he does not deny having conversation on the road to the station house, he carefully refrained from giving one word of it or telling anything about it. This was the state of the evidence as between the two parties most interested in the transaction. It is claimed by the patrolman that he is corroborated by the testimony of three witnesses who followed him to the station house, two of whom were present at the time he was put under arrest. These three witnesses testify substantially that the conversation at the corner was that the roundsman accused the relator of being drunk; that the patrolman denied it, and stated that he drank nothing but seltzer, which was brought to him by one of the witnesses, who corroborates him in that regard, but that nevertheless the roundsman accused him of being drunk and ordered him to go to the station house, which he and the roundsman proceeded to do. The witnesses testified that they followed behind. They say that they were close enough to hear all that was said by the patrolman to the effect that he was sober and ought not to have been arrested, but they do not pretend to testify explicitly and directly to all that was said. They simply speak of the subjects upon which the patrolman was talking to the roundsman. It is evident that, so far as the fact of the conversation is concerned, their testimony corroborates the roundsman, and does not corroborate the relator, who says nothing about having any conversation on the way to the station house. The weight to be given to their testimony, and whether it should

be accepted as contradicting that of Bailey, depends on the question whether or not they heard all that was said. They testified that they were near enough to do so, and Flock says that he was within hearing the whole time and he testifies that no such language was used as that stated by the roundsman. Mulcahy, the other witness who was present talking with the two men and who followed them to the station house, said that he was near enough to hear, but that he heard nothing of the sort and that the relator did not use any such language. The other witness, Mulvey, testifies to substantially the same thing. That testimony is entirely negative in its nature. It is quite evident that there was conversation between these two men on the way to the station house. It is equally evident that each man was somewhat excited and that the relator particularly strongly resented his arrest and the charge of drunkenness made against him. It is quite clear, too, that he found fault with the roundsman for arresting him. So much is necessarily to be inferred from the testimony of these witnesses who are said to be disinterested. But it is remarkable that while they concede so much they are utterly unable to give more than the idea which was conveyed, and they say nothing about the substance of the words in which it was conveyed. In fact, only one of them attempts to state any words at all. It is impossible to regard that testimony as corroborating fully the story of the patrolman unless one is prepared to accuse the roundsman of rank perjury. But no foundation is laid for anything of that kind. It is said that it is undoubtedly true that, on arriving at the station house, he preferred a charge of drunkenness against the relator and that he had accused him of drinking rum in front of the saloon. This last charge was a very natural one and one which, under the circumstances, he was justified in making. When a policeman is seen in front of a saloon and a drink is brought out to him which he tosses off, any one seeing it has a right to infer that he is drinking something besides water. Whether he shall believe the policeman when he says that he drinks nothing else, is a matter which must be determined by the character of the man who makes the statement and all the surrounding circumstances. The roundsman was perfectly justified in believing that the drink which was taken was something else than water; and, acting upon that belief, he was perfectly justified in saying to the patrolman what he did say when he

first accosted him.   It is clear, however, that the patrolman was not intoxicated, and so far as the making of that charge was concerned it was a mistake at least.   It was claimed by the relator that the roundsman having made that charge against him was incensed at his failure to substantiate it, and for that reason made the subsequent charge for which the relator was dismissed.   But there is nothing to establish that except the fact that one charge was made after the other.   The charge of drunkenness is a more serious one than that of using abusive language, and it might well have been thought by the roundsman that, having made one charge, there was no necessity of making the other.   The fact that he did not make both charges at once is fairly to be considered in weighing his testimony, but it is not, to my mind, a matter of any great moment, and certainly it is not to be inferred from anything that is made to appear in this case that, in making either charge, he was actuated by any ill-feeling towards the patrolman or by any desire to do anything more than his duty.   If the case were one tried before a jury it is quite clear that the court would have been compelled to submit the truth of the charge to their determination; and, having in view all the corroborating circumstances, I do not think the court would be justified in setting aside a verdict based upon a belief in the truth of the testimony of the roundsman.   For these reasons, and applying the rule, well settled in these cases, I cannot say that the conclusion reached by the commissioners was wrong, and, therefore, their action should be affirmed, and the writ dismissed.

PATTERSON, J., concurred.

Proceedings annulled and relator reinstated, with costs.